**DOUGHNUT MACH. CORPORATION v. DEMCO, Inc., et al.**

**No. 1616.**

District Court, D. Maryland.

March 12, 1930.

Adams & Hargest and Edmond H. Johnson, all of Baltimore, Md. (Fraley & Paul, Frank B. Fox, and Henry N. Paul, all of Philadelphia, Pa., of counsel), for plaintiff.

Frank J. Kent and George Ramsey, both of New York City, and Edwin F. Samuels, of Baltimore, Md., for defendants.

SOPER, District Judge.

The plaintiff asks a preliminary injunction against the four defendants, who are Demco, Inc., a manufacturer of baking machines; Nye-Mosher Company, a seller of

such machines; Joe-Lowe Corporation, a seller's agent; and the E. H. Koester Bakery Company, a user. The object of the motion is to secure an injunction against the sale or use of certain machines alleged to infringe claim 1 of United States patent to Tomlinson, No. 1,320,662, covering a doughnut baking machine. The validity of this claim of the patent was sustained by the Circuit Court of Appeals for the Ninth Circuit in Bake-Rite Mfg. Co. v. Tomlinson, 16 F. (2d) 556, and this decision is accepted as governing this motion as far as it goes.

Claim 1 of the patent is as follows:

"In an apparatus of the character described a receptacle for hot grease, mechanism for turning doughnuts or the like over after they have been, in said receptacle for a predetermined length of time, and mechanism for thereafter removing them, after a further predetermined length of time."

Two types of machines, which may be called respectively type A and type B, have been manufactured by Demco, Inc., and have been put into use. The affidavits in support of the motion for a preliminary injunction indicate that these machines are of the following description:

Type A machines: The total length of the cooking vat is seven feet long and twenty-six inches wide. The total length of the surface of the cooking liquor to the point where the doughnuts are taken out of the liquor by the ejector conveyor is six feet. There are two doughnut cutters or formers at the deposit end of the machine, and beneath them is a channel for each cutter with adjustable side walls extending from that end of the tank longitudinally for a distance of about sixteen inches. Underneath the cutters is a small conveyor belt b which is completely submerged and carries the raw dough while submerged toward a second conveyor. The second conveyor c engages the doughnuts as they rise from belt b and carries them forward. This conveyor is twelve inches in total length, and is located above the surface of the cooking liquor. The doughnuts are then floated free for something more than six inches from the conveyor c to the end of the vane on the turnover f-g. The doughnuts are engaged by the turnover vane and turned over, partly floating and partly submerged during a distance of six inches. From the turnover the doughnuts are freely floating for twelve inches to the point where they encounter the third conveyor belt d. The conveyor d is inclined downward, and the doughnuts are submerged and conveyed by that conveyor for a distance of eighteen inches. When released from the conveyor d, the doughnuts float freely for ten inches until they encounter the ejector conveyor e. At that point they are lifted out of the cooking liquor and delivered. At the delivery end of the machine, from the point where the doughnuts are dropped by the cutter until they rise to the second conveyor c, the articles are submerged by their own weight for a distance of four to eight inches. There is a movement of the doughnuts from the point of deposit to the delivery caused by the conveyor belts, the movement of the cooking liquor, and the paddle mechanism.

Type B machines: The doughnuts, dropped from the cutter or former, sink to a belt A which is completely submerged and are moved by that belt for a distance of from three to five inches. They rise from that belt and encounter the underside of a second conveyor belt B which is located above the surface of the liquor with the lower side slightly below the surface of the liquor, so that the doughnuts are submerged by that belt. After release from the belt B, the doughnuts are freely floating for a distance of from twenty to twenty-four inches until they encounter the underside of the belt C. The belt C is inclined, and the doughnuts are submerged thereunder for a distance of about fifteen inches. When released from belt C, the doughnuts rise to the surface, and encounter the revolving two-vaned paddle wheel. The distance between belts C and D is ten inches and the pusher G is placed in that space. The pusher has two vanes revolving on an axis, each vane four inches in width, and the axle so located that each vane is submerged an inch or less. When the vanes encounter a doughnut, they shove it along the surface of the cooking liquor. In this space the doughnuts float freely on the surface, and continue to float for some four to six inches until they encounter the belt D. The belt D has about the same length as the belt C, and carries the doughnuts submerged for a distance not indicated on the sketch, but apparently are submerged for about twelve inches. When the doughnuts rise from the belt D, they float freely on the surface until they are lifted out of the cooking liquor by the delivery belt E. The figures shown on the sketch indicate that the doughnuts float from belt D to the point where they are lifted from the liquor by the belt E for a distance of from sixteen to eighteen inches. The doughnuts are progressed along the length of the tank both by the conveyor belts and

by the movement of the current of the liquor and also in part by the paddle mechanism.

It is the opinion of the court, after a consideration of the affidavits and briefs of counsel, that the machines of type A infringe the first claim of the patent in suit. This conclusion is reached notwithstanding the contention of defendants that in type A machine the cooking is in part by the submerged rather than the flotation method described in the patent; that the doughnuts are turned over inside the grease instead of in the air as in the machine illustrated by the patent, and that the length of time for the frying operation is predetermined with more exactness in the method described in the patent than is possible with the machine under discussion. Nor is there any substance, in the opinion of the court, in the fact that the paddle wheel by which the doughnuts are turned over in the defendants' machine moves in the same direction as the current of flowing grease, while in the infringing machine in the case in the Ninth Circuit the paddle wheel moved in the direction opposite to that of the flowing grease. It is doubtless true that in the defendants' machine in the pending case the paddle wheel assists the acceleration of moving current, but, since the paddle wheel also turns over the doughnuts, infringement is made out.

It is conceded that the defendant's type B machine, as observed in the plant of the defendant Koester Company, does not infringe, because, although equipped with a paddle wheel, the adjustment is such that the blades of the paddle are not submerged to a sufficient depth below the surface of the liquid to turn the doughnuts over, and hence there is no application of the gist of the Tomlinson method. It is, however, clear that the machine as described by the witnesses would infringe if a slight change were made whereby the axis upon which the wheel turns should be lowered so that the blades of the paddle would penetrate sufficiently below the surface of the liquid to turn the doughnuts over as they pass.

■ It is, however, the opinion of the court that a preliminary injunction should not issue in this case as to either type of machine. The evidence shows that the plaintiff had all of the information which it now possesses as to the use of the machines of type A on or about November 20, 1928. It then knew that such machines had been manufactured by the Demco Company, and were in use by the Koester Company and others. Notice of infringement went out on November 20, 1928, after which and before suit all of the type A machines but two were withdrawn from the market, and no additional machines of this type have since been manufactured. Ten other machines in course of construction were abandoned. If these circumstances were such as to indicate apprehension of irreparable damage on the part of the plaintiff, one would expect to find that a suit for preliminary and permanent injunction would be promptly instituted. The plaintiff, however, did not institute the pending suit until December 19, 1929. The only explanation of the delay which has been offered is that some difficulty arose in securing a clear record title to the patent in the Patent Office. But it is manifest that this formal matter could have been more speedily concluded had the owners of the patent moved with ordinary diligence. Under these circumstances, it does not appear to the court that a preliminary injunction is needed at this time. It may be added that the defendant has furnished to the plaintiff information as to the present location of the two infringing machines which it was unable to withdraw from use.

■ In regard to machines of type B, there is no evidence that at any time any of these machines has been used in such a manner as to infringe the patent. The plaintiff suspects that they may be intended so to be used, because the paddle wheel is placed at such a point that by lowering it the doughnuts could be turned over, and the frying operation more completely accomplished. However, there is no evidence to indicate that any of the defendants intend to manufacture or to use the machine in such a way as to infringe the patent. The apprehensions of the plaintiff are not sufficient to justify injunction. The opinion is herein expressed that a machine altered in the way pointed out would infringe the Tomlinson patent, and the court does not apprehend that any manufacturer or user of the machine will be likely, notwithstanding this finding, to use the machine in such a way as to infringe the patent. The plaintiff, of course, will be at liberty, should such infringement occur, to renew the application for a preliminary injunction.